United States Court of Appeals
FOR THE EIGHTH CIRCUIT
No. 97-1441WM

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | On Appeal from the United |
| | * | States District Court |
| | * | for the Western District |
| Bing Wong, also known as Randy | * | of Missouri. |
| Shaw, also known as James Benson, | * | |
| also known as Mark Johnson; Peter L. | * | |
| Moore; and William Andre Mitchell, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 8, 1997

Filed: October 14, 1997

_____

Before RICHARD S. ARNOLD, Chief Judge, HEANEY and BEAM, Circuit Judges.

_____

RICHARD S. ARNOLD, Chief Judge.

In this case the Government appeals the sentences imposed on three defendants following guilty pleas for drug-related crimes. We reverse the sentences imposed by the District Court and remand the case for resentencing. The reasons given by the

District Court for departing below the Guidelines -- for example, that the cost of imprisonment for long periods of time is too high -- are insufficient in law.

## I.

Bing Wong, Peter L. Moore, and William A. Mitchell were named with six other codefendants in a ten-count indictment returned on April 11, 1995, charging them with violations of federal narcotics laws. In November 1995, Wong, Moore, and Mitchell each pleaded guilty to Count Two of the indictment, which charged a conspiracy to distribute cocaine and cocaine base ("crack") in violation of 21 U.S.C. § 846 (1994).

The Government and Wong agreed that Wong's base offense level under the federal Sentencing Guidelines, based upon the amount of "crack" cocaine involved, would be Level 38, with a four-level enhancement added under U.S.S.G. § 3B1.1 because Wong was the leader of a criminal organization comprised of five people or more. See U.S.S.G. § 3B1.1(a). Wong and the Government also agreed that Wong would receive a three-level downward adjustment for acceptance of responsibility, bringing his final offense level to 39. The Government and Moore agreed that Moore's offense level under the Sentencing Guidelines would be Level 38, and that Moore would receive a decrease of three levels for acceptance of responsibility. Likewise, under Mitchell's plea agreement, Mitchell's base offense level was 38, and he was entitled to a three-level downward adjustment for acceptance of responsibility.

The District Court held a sentencing hearing for the three defendants on December 17, 1996. At the hearing, each defendant stipulated to the amount of "crack" attributable to him for purposes of the Sentencing Guidelines. Wong stipulated to responsibility for 30 kilograms of "crack"; Moore stipulated to 30 kilograms; and Mitchell stipulated to 20 kilograms. Wong objected to being placed in Criminal History Category III, but his objection was overruled by the District Court. Because Wong's base offense level was 39 and his Criminal History Category was III, he

qualified for 324 to 405 months of imprisonment under the Sentencing Guidelines. Moore and Mitchell were each found by the District Court to qualify for a reduction of their sentences under the five-part "safety valve" test of 18 U.S.C. § 3553(f) (1994), therefore reducing their offense levels to 33 and their periods of imprisonment to 135 to 168 months each.

However, the sentences imposed by the District Court did not fall within these ranges. Wong received a sentence of 240 months' imprisonment, and Mitchell and Moore each received a 120-month sentence. Each defendant also received a fine of $500.00 and a $50.00 special assessment. In sentencing Wong, Moore, and Mitchell, the District Court said:

> I am going to make a decision to eliminate what I think would be an element of unfairness in sentencing strictly according to the guidelines. . . . [L]et me just say in doing so I am not undertaking technically to justify a downward departure, although I believe that even under the guidelines and regulations under the guidelines a downward departure is probably justifiable. I am really doing what I am doing today because I think it is fair and I think it is unconscionable to do otherwise, not only to the defendants but equally to the people of the United States.

Sentencing Hearing Trans. at 36. The Court, however, went on to mention a number of factors it believed justified downward departures for these defendants. The case is now here on the appeal of the United States.

## II.

When sentencing criminal defendants, a federal court may depart from the Sentencing Guidelines only in a manner provided by the Guidelines, subject of course

to constitutional or statutory limits, none of which is argued here. United States v. Johnston, 973 F.2d 611, 613 (8th Cir. 1992), cert. denied, 506 U.S. 1068 (1993). The District Court's disagreement with the Guideline ranges applicable to the defendants is not sufficient to justify deviation from the Guidelines. The commentary to U.S.S.G. § 5K2.0 notes that "dissatisfaction with the available sentencing range or a preference for a different sentence than that authorized by the guidelines is not an appropriate basis for a sentence outside the applicable guideline range." See also Koon v. United States, 116 S. Ct. 2035, 2044 (1996) ("A district judge now must impose on a defendant a sentence falling within the range of the applicable Guideline, if the case is an ordinary one."). Insofar as the sentences imposed by the District Court reflect only the Court's dissatisfaction with the constraints imposed on judicial discretion by the Sentencing Guidelines, the sentences must be reversed.

The Sentencing Guidelines do allow a district judge to depart from the prescribed ranges in exceptional cases. Koon v. United States, 116 S. Ct. at 2044. Examples of "encouraged factors" include victim provocation, coercion and duress, and the defendant's diminished capacity. See U.S.S.G. §§ 5K2.10, 5K2.12, 5K2.13; Koon, 116 S. Ct. at 2045. Examples of "forbidden factors," or factors which may not be used in determining whether to depart from the guidelines, include the defendant's race, creed, sex, religion, national origin, or socio-economic status. See U.S.S.G. § 5H1.10; Koon, 116 S. Ct. at 2045. If a factor is unmentioned by the Sentencing Guidelines, the court may use it only if it determines, after taking into consideration the structure and theory of relevant Guidelines and the Sentencing Guidelines as a whole, that the factor is sufficient to "take the case out of the Guideline's heartland." Koon, 116 S. Ct. at 2045.

The District Court noted several factors it used in reducing the appellees' sentences below the prescribed Guidelines levels. First, the Court expressed concern with the fact that other defendants involved in the same drug trafficking scheme had

received lesser sentences from other federal district judges.[1] This Court has held that "[d]isparity between sentences imposed on codefendants is not a proper basis for departure." United States v. Polanco, 53 F.3d 893, 897 (8th Cir. 1995), cert. denied, 116 S. Ct. 2555 (1996). Though one of the congressional goals in enacting the Sentencing Guidelines was the promotion of proportional and uniform sentences, some disparity will inevitably exist because of the unique facts of each individual defendant's case. Id. Therefore, the District Court's reliance on disparate sentences as a justification for departing from the guidelines was erroneous.

Next, the District Court cited the costs of imprisoning the three defendants as a reason for departing from the guidelines and imposing shorter sentences. The decision whether tax dollars should be used to pay for lengthy sentences is a congressional determination, not one to be made by federal courts. The Sentencing Guidelines do not mention the expenses of imprisonment as a factor a court may use in deciding whether to depart from the Guidelines, and the District Court gave no explanation as to why such a factor would take the defendants' case out of the "heartland" of the applicable Guidelines. See Koon, 116 S. Ct. at 2045. This factor should not have been considered by the District Court when it imposed the defendants' sentences.

The District Court also justified its departure because it did not believe the length of the sentences imposed by the Guidelines on the three defendants was necessary to prevent future criminal activity. This consideration has already been taken into account in the drafting of the Guidelines. See 28 U.S.C. § 994(c)(6) (1994) (Commission

---

[1]Four defendants who were involved in the Wong organization received sentences from other federal judges which departed from Sentencing Guideline ranges, all because of motions made by the Government as a result of the defendants' substantial assistance. Appellant's Br. at 13-14 n.11. No such motion was made in these three defendants' cases, and there is no claim that the Government was legally obliged to make such a motion.

required to consider "the deterrent effect a particular sentence may have").  This factor should not have been used to depart from the Guideline ranges.

Next, the District Court noted the distinction made under Sentencing Guidelines between powder cocaine and cocaine base, or "crack."  Under the Sentencing Guidelines, for sentencing purposes, "crack" is worth 100 times as much as powder cocaine.  See 21 U.S.C. § 841(b) (1994); U.S.S.G. § 2D1.1(c).  We have rejected the proposition that this disparity can justify a downward departure.  See United States v. Lewis, 90 F.3d 302, 304 (8th Cir. 1996), cert. denied, 117 S. Ct. 713 (1997).

Finally, the District Court justified its downward departure by the fact that there were no weapons or violence involved in the criminal offenses.  A court should not ordinarily depart from a prescribed sentence on the basis of a potentially mitigating factor which the Guidelines have already taken into account.  Koon, 116 S. Ct. at 2045.  In this case, the applicable Guidelines for each defendant had already taken into account the absence of weapons or violence.  None of the three defendants received the two-level enhancement which is required for possession of a weapon in connection with a drug offense.  See U.S.S.G. § 2D1.1(b)(1).  And Mitchell and Moore each received a two-level downward adjustment under U.S.S.G. § 5C1.2, the "safety valve" exception, which, before it can be applied, requires that the defendant not have possessed a weapon or used violence in connection with his offense.  See 18 U.S.C. § 3553(f)(2) (1994); U.S.S.G. § 5C1.2(2).  Under Koon, if a factor has already been taken into account by the Guidelines, a district court "should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present."  Koon, 116 S. Ct. at 2045.  There is nothing in the record to suggest that the absence of weapons or violence makes this case exceptional or extraordinary, when compared with other cases in which there was no use of weapons or violence.

A word should be added about a factor not expressly referred to by the District Court at the sentencing hearing. Mitchell filed a "motion for downward departure based on 'Family Need.'" The grounds advanced by the motion were, in brief, that four children were dependent upon Mitchell for their support. Two of these children had been living with Mitchell and his wife, Renita Y. Gee. Ms. Gee was also a defendant in the case, and Mitchell did not believe she would be able to support the children in his absence.

The District Court granted Mitchell's motion for downward departure, but in giving its reasons, it mentioned only the factors we have already discussed in this opinion. It said nothing about the family's circumstances alleged in the motion. Thus, we do not know whether the District Court rejected these family circumstances as a ground for departure, or whether it simply failed to reach the issue. The parties and the District Court, on remand, will be free to pursue this matter in whatever way the law and the facts permit.

A few observations on the point may be in order. Congress instructed the Commission to consider the relevance of "family ties and responsibilities" to sentencing. 28 U.S.C. § 994(d)(7) (1994). Congress also declared "the general inappropriateness of considering the . . . family ties and responsibilities" of a defendant in fixing the length of imprisonment. 28 U.S.C. § 994(e). The Commission, in turn, has issued a policy statement under U.S.S.G. § 5H1.6, which reads as follows:

> Family ties and responsibilities . . . are not ordinarily relevant to determining whether a sentence should be outside the applicable guideline range.
> . . . .

Such factors, however, "may be relevant . . . in exceptional cases," Introductory Commentary, U.S.S.G. Part 5H. We suggest that the District Court, on remand,

explore whether this case can properly said to be extraordinary or exceptional in any relevant way.

## III.

Because the District Court erred in departing from the Sentencing Guidelines for the reasons we have discussed, we reverse the sentences for Bing Wong, Peter L. Moore, and William A. Mitchell, and remand the case to the District Court for resentencing, in a manner not inconsistent with this opinion.

It is so ordered.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.